Filed 10/30/25  In re E.H. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re E.H., a Person Coming Under the Juvenile Court Law. | C102525 |
| THE PEOPLE, | (Super. Ct. No. JV143449) |
| Plaintiff and Respondent, | |
| v. | |
| E.H., | |
| Defendant and Appellant. | |

Following the minor E.H.'s admission to attempted murder and assault with a semiautomatic firearm (as well as great bodily injury and gun use enhancements), the juvenile court committed him to the Valley Oak Youth Academy (VOYA), a secure youth treatment facility (SYTF) (Welf. & Inst. Code, § 875, subd. (a)).[1]  E.H. appeals this order

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

contending the juvenile court abused its discretion by focusing "excessively" on the seriousness of the offense while discounting other factors supporting a less restrictive placement. He further argues there is no evidence he would probably benefit from a SYTF placement and/or that less restrictive alternatives were inappropriate. We disagree and will affirm.

## I. BACKGROUND

The description of the offense is taken from the factual basis for E.H.'s plea, including the juvenile intake report. In March 2024, E.H. used Instagram to lure the victim Michael to an area near E.H.'s apartment. E.H. then shot Michael in the face with a semiautomatic gray polymer ghost gun, causing great bodily injury. Authorities recovered 12 casings and two unfired bullets at the scene. A similar shell casing was recovered from E.H.'s bedroom. E.H.'s online records showed him with a semiautomatic gray polymer ghost gun. What appeared to be the same gun was later recovered from individuals tied to E.H. through previous police contacts.

On July 8, 2024, the People filed a juvenile wardship petition alleging that E.H. attempted to murder Michael (Pen. Code, §§ 664/187, subd. (a)—count one), with an enhancing allegation that he personally and intentionally used a firearm causing great bodily injury (Pen. Code, § 12022.53, subd. (d)) and assaulted Michael with a semiautomatic firearm (Pen. Code, § 245, subd. (b)—count two), with enhancing allegations that he personally used a polymer firearm (Pen. Code, § 12022.5, subds. (a), (d)) and inflicted great bodily injury on the victim, Michael (Pen. Code, § 12022.7). E.H. was officially detained the next day.

On July 11, 2024, E.H. admitted the truth of all the allegations in the wardship petition, and the matter was set for a disposition hearing.

A.      *The Probation Department's Social Study Report*

In August 2024, the probation department filed a social study report recommending E.H.'s commitment to a VOYA, an SYTF. We intentionally omit the

information previously included in the juvenile intake report. Michael and E.H. were previously friends and had lived together for several years. The two had a falling out after it came to light that Michael had been lying to E.H. Sometime thereafter, someone shot at E.H.'s apartment. Michael claimed responsibility for this shooting on social media and made threats to shoot at E.H.'s grandmother's home. These "incidents were reported to the police." Thereafter, E.H. obtained the ghost firearm. He then tricked Michael into meeting with him outside his apartment and shot him in the face with the gun. Michael sustained injuries to his upper mouth and left nostril, requiring treatment at the hospital and causing him to lose at least one tooth.

E.H.'s mother raised him with very limited contact from his father. E.H., his mother, and a sister shared an apartment, and mother reported no negative behavioral issues. E.H. was also close to his grandmother. The family had seven unsubstantiated referrals to child protective services. E.H. was in a severe car crash when he was 14 years old, resulting in a major injury to his pelvis that required surgery and rehabilitation. Following the accident, E.H. could no longer play football, and his recreational activities included playing video games and spending time with his girlfriend. He admitted to daily marijuana use but denied other drug use.

Although enrolled in the 12th grade, E.H. had only earned 64.5 credits, required 155.5 more credits to graduate, and had been suspended twice for fighting. He did not have an individualized education plan, 504 plan,[2] or special education services. E.H. also had no history of mental illness and had never seen a counselor, but nevertheless believed he had post-traumatic stress disorder from being shot at while out in the community.

While in juvenile hall, E.H. was written up seven times for "ongoing peer and gang agitation in which he and other residents have threatened to fight." E.H. denied

---

[2] 29 U.S.C. § 794.

being in a gang but admitted to "associating with friends and family who were members of the Oak Park Blood criminal street gang." While in detention, E.H. participated in school, exercise, and other community programs.

The probation department assessed E.H. as a moderate risk to reoffend. His high-risk areas included attitudes/orientation and leisure/recreation. Moderate risk areas included education/employment, peer relations, substance abuse, and personality/behavior. E.H.'s identified strengths included support from his grandmother and mother.

The report generically described over several pages the programs available at VOYA and noted an individual assessment would occur following commitment. Included among these programs were: individual and group therapy, behavior treatment interventions to avoid aggression and violence, substance abuse treatment, mental health screening and treatment, academic and vocational services, and reentry services.

The report concluded that even though this was E.H.'s first offense, "the crime was severe in nature causing great bodily injury to the victim" and endangering members of the community by shooting him in front of an apartment complex. Thus, the probation department recommended a VOYA commitment because he required "an intensive structured environment" and would benefit from the services offered at VOYA including therapeutic, vocational, and academic services. Finally, while the report did not specifically address each factor enumerated under section 875, subdivision (a)(3)(A) through (E), the recommended orders specifically included a finding that these factors had been considered.

E.H. opposed the department's recommendation, and the juvenile court granted his request for a contested disposition.

B.      *E.H.'s Proposed Alternative Disposition*

Although the juvenile court had set a schedule for briefing, E.H. did not file a written opposition. Instead, he presented his alternative disposition at the contested

4

disposition hearing itself, including 10 defense exhibits.  E.H. proposed his release to his mother or grandmother for community-based rehabilitation and supervision.  This would include a restorative justice process through the Yolo Conflict Resolution Center allowing E.H. to take responsibility for his actions toward Michael and possibly repair their relationship.  E.H. also proposed a course of trauma focused behavioral therapy to address his clinically relevant trauma symptoms identified through screening by the U.C. Davis Trauma and Adolescent Mental Illness program.[3]  This would include participation in the River Oak Juvenile Justice Diversion and Treatment Program run through behavioral health.  E.H. believed he would qualify for this program but had not been formally accepted.

E.H. further proposed participation in a gun violence prevention program run by Brother to Brother and designed to intervene, interrupt, and prevent further gun violence.  Gun violence would also be discouraged through his continued participation in mentoring with Beautiful Evolutions.  Finally, E.H. wished to participate in vocational training targeted towards the medical field and had identified a local program offering those services.

In support of his alternative plan, E.H. highlighted that he was 17 years old and had never before been in trouble with the law.  Further, while acknowledging the seriousness of the case, he had never had a chance at community rehabilitation and urged that his needs could be met through community-based programs.  Allowing him an opportunity at community-based treatment prior to a VOYA commitment would be consistent with the goals of the juvenile court and realignment.  E.H. argued the unique circumstances of his case assuaged the concerns for community safety.

---

[3] E.H was ineligible for treatment through the U.C. Davis Trauma and Adolescent Mental Illness program because he did not display psychosis or psychosis-like symptoms.

Finally, in arguing against a VOYA commitment, E.H. contended the probation department had assessed him as "moderate" risk to reoffend, and its recommendation appeared to be a "knee-jerk" reaction based solely on the severity of the offense and without consideration of the other relevant criteria. He also faulted the report for failing to identify his unique needs or explain how a VOYA commitment would meet them. There was no evidence a less restrictive alternative would not work or endanger the community, and consideration of the section 875, subdivision (a)(3) factors showed E.H.'s alternative plan was a suitable alternative.

The People disagreed, arguing that E.H.'s needs would be met by a secure VOYA commitment where rehabilitation programs and schooling would be readily available. Moreover, a VOYA commitment would not preclude E.H. from ultimately receiving the services identified in his plan and would give E.H. the opportunity to demonstrate that the incident was a very serious, one-time mistake. The seriousness of the offense by itself justified a VOYA commitment.

## C.    *The Juvenile Court's Decision*

At the outset, the juvenile court announced its decision to commit E.H. to VOYA and then explained its consideration of the section 875, subdivision (a)(3) factors, including that it had the discretion to afford those factors different weights.

As to the severity of the offense (§ 875, subd. (a)(3)(A)), E.H.'s home was shot at, and he believed his former best friend was the shooter. E.H. went to that friend and shot him in the face, causing facial scarring and the loss of at least one tooth. E.H. admitted this constituted attempted murder, and the court commented it would cause life-long trauma to the victim. The risk to the victim and public safety was "the overriding concern in the case," and the court found it "paramount" that E.H. receive in custody rehabilitation to help him as well as protect public safety.

6

The juvenile court commented that the previous delinquent history factor (§ 875, subd. (a)(3)(B)) was used where there was a prior history to assess the appropriateness of the proposed plan.

As to the appropriateness of programs at VOYA (§ 875, subd. (a)(3)(C)), the juvenile court acknowledged the generic description of VOYA services but found that E.H.'s individual needs would be addressed as part of the individual rehabilitation plan process that would take place in the 30 days following commitment. Moreover, E.H.'s attorney and proposed providers could provide input into that planning process and some might be able to provide concurrent services during a VOYA commitment.

Further, the court's "biggest and overriding concern" was that the crime was "an attempted murder that seem[ed] impulsive and that involved a shooting of a victim because there was speculation that the victim was shooting [E.H.'s] home." Given the nature of this admission, the court concluded "the goals of community safety c[ould ]not be met in a less restrictive disposition at th[at] time." (§ 875, subd. (a)(3)(D).)

Finally, regarding the minor's specific needs bearing on the suitability of a secure environment (§ 875, subd. (a)(3)(E)), the juvenile court opined E.H.'s "trauma . . . can and should be met with treatment in VOYA." The court adopted the recommended findings and orders with certain changes, including the addition that "[t]he multi-disciplinary team is to include treatment focused on restorative justice, . . . trauma focused cognitive behavioral therapy, and use of firearms."

E.H. timely appealed.

## II.  DISCUSSION

E.H. challenges the juvenile court's dispositional order committing him to VOYA arguing the juvenile court abused its discretion: (1) by excessively focusing on the seriousness of the offense; and (2) because there was no showing that he would probably benefit from a VOYA commitment and/or that less restrictive alternatives were inappropriate. We are unpersuaded.

7

*A.      Applicable Law*

Until recently, the Department of Juvenile Justice (DJJ) was "the state's most restrictive placement for its most severe juvenile offenders." (*In re Miguel C*. (2021) 69 Cal.App.5th 899, 902.)  DJJ was previously known as the California Youth Authority. (*Id.* at p. 906, fn. 4.)  In 2020, the Legislature enacted juvenile justice realignment by passing Senate Bill No. 823 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 337).  Implementing the Legislature's juvenile justice realignment program required the eventual closure of DJJ and the transfer of its responsibilities to California counties.  (§ 736.5, subd. (a).)  The county-level equivalent of DJJ is a secure track commitment, also known as a SYTF. (§§ 875, 875.5.)

Section 875, subdivision (a)(3) authorizes commitment to an SYTF if a ward meets certain criteria and "[t]he court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable."  The juvenile court must base its determination "on all of the following criteria:  [¶]  (A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims[;]  [¶]  (B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward[;]  [¶]  (C) Whether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward[;]  [¶] (D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court[;]  [¶] (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a secure youth treatment facility."  (§ 875, subd. (a)(3)(A)-(E).)

We review the juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences in support of the juvenile court's decision. (*In re Angela M*. (2003) 111 Cal.App.4th 1392, 1396.) " 'A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence.' " (*In re Khalid B*. (2015) 233 Cal.App.4th 1285, 1288.) There is no abuse of discretion where the commitment is supported by substantial evidence. (*In re Angela M., supra*, at p. 1396.)

B.     *Analysis*

We reject E.H.'s argument that the juvenile court focused "excessively" on the seriousness of the offense. E.H. has not shown the juvenile court misunderstood its sentencing discretion or failed to consider the section 875, subdivision (a)(3) factors when it reached its decision to order a VOYA commitment. E.H. has not established that he would not benefit from a VOYA commitment and/or that less restrictive alternatives were appropriate. On the contrary, we conclude substantial evidence supports the juvenile court's commitment decision. (*In re Angela M., supra*, 111 Cal.App.4th at p. 1396.)

E.H.'s attempted murder offense was extremely serious. (§ 875, subd. (a)(3)(A).) E.H. had a falling out with his former best friend Michael. Shots were fired at E.H.'s home, and E.H. believed Michael was responsible. Although the family contacted the police, E.H. took matters into his own hands. He obtained a ghost gun, lured Michael to the outside of his apartment building, and shot Michael in the face. Twelve casings and two unfired bullets were recovered from the scene. Michael sustained injuries to his upper mouth and left nostril, requiring treatment at the hospital. E.H. admitted he had tried to kill Michael. The juvenile court could reasonably conclude these actions demonstrate criminal sophistication and a high risk to the community.

E.H. did not have a prior juvenile court record. (§ 875, subd. (a)(3)(B).) A lack of a prior record, however, does not preclude a VOYA commitment. (See, e.g., *In re M.S.*

(2009) 174 Cal.App.4th 1241, 1250 [no rule juvenile court must attempt less restrictive placements prior to sending minor to a placement of last resort].)

The programming, treatment, and education offered at VOYA were appropriate to meet both E.H.'s treatment and security needs. (§ 875, subd. (a)(3)(C).) E.H. had never been diagnosed with a mental illness, but testing performed by the U.C. Davis Trauma and Adolescent Mental Illness program suggested he would benefit from treatment designed to address his exposure to trauma. Although E.H. was a senior in high school, he had earned less than half of the credits needed to graduate. E.H. admitted to daily marijuana use. Although a formal treatment plan would be devised within the 30 days following commitment, the VOYA program included individual and group therapy, mental health screening and treatment, substance abuse treatment, academic and vocational services, and reentry services. Thus, the services offered at VOYA aligned with E.H.'s identified needs and would be provided in a secure environment consistent with the probation department's determination that E.H. needed "an intensive structured environment."

Substantial evidence supports a conclusion that the goals of rehabilitating E.H. and keeping the community safe could not be met by assigning E.H. to an alternative, less restrictive disposition available to the juvenile court. (§ 875, subd. (a)(3)(C).) E.H. proposed the return to his mother or grandmother with community-based treatment. On appeal, the People contend that E.H. was ineligible for this disposition as a matter of law in light of restraints on the placement of minors who have used firearms. (§ 602.3, subd. (a).) E.H. responds that section 602.3 could have been complied with simply by committing him to juvenile hall for time-served and then releasing him to his family for community-based treatment. We need not resolve this issue because the juvenile court's order complied with section 602.3's limitations, and there were sound reasons for rejecting E.H.'s proposed, less restrictive disposition. As highlighted by the juvenile court, E.H. admitted committing attempted murder because of speculation about the

10

victim's actions. He committed this act in front of an apartment building and appears to have shot more than 10 times. Further, the probation department's administrative staffing concluded he needed "an intensive structured environment," consistent with the juvenile court's observation that the seriousness of E.H.'s admission meant that "the goals of community safety [could not] be met in a less restrictive disposition at th[at] time."

The record does not reflect evidence suggesting a VOYA commitment was inappropriate. (§ 875, subd. (a)(3)(E).) E.H. was 17 years old, without a mental illness diagnosis or an individualized education plan. The juvenile court took steps to ensure that E.H.'s individual treatment plan would include specific components consistent with his identified needs, including, "treatment focused on restorative justice . . . trauma focused cognitive behavioral therapy, and use of firearms."

Having reviewed the section 875, subdivision (a)(3) factors, we conclude E.H. has not shown the juvenile court abused its discretion in committing him to VOYA.

### III. DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.


We concur:


/S/

_____

EARL, P. J.


/S/

_____

FEINBERG, J.

11